UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA MACIAS GONZALEZ,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondent.

CASE NO. 2:26-cv-01642-DGE

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 6)

Before the Court is Petitioner's amended petition for a writ of habeas corpus. (Dkt. No. 6.) For the reasons discussed herein, the petition is DENIED in part and GRANTED in part.

## I. BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Mexico. (Dkt. Nos. 6 at 24; 10 at 1; 11-2 at 2.) Petitioner entered the United States "with her parents and siblings without inspection at an unknown date and an unknown time." (Dkt. No. 10 at 2.) Petitioner, who was born in 1977, "was the child of an eventual amnesty card holder under the United States Immigration and

Naturalization Service's ("INS") 1987-1990 Family Fairness policy." (Dkt. Nos. 10 at 2; 11-2 at 2.) Respondents assert that on December 16, 1988, Petitioner at age 11, along with her parents and siblings, requested to voluntarily depart the United States. (Dkt. No. 10 at 2.) On June 28, 1989, granted Petitioner voluntary departure and instructed her to leave the United States on or before June 27, 1990. (Dkt. Nos. 10 at 2; 11-1 at 2.) At that time, Petitioner would have been 13 years old.

Petitioner never left the United States, and has apparently resided in this country ever since. (*See* Dkt. No. 6 at 42) ("Lisa Macias has lived in the United States for over 40 years.") Petitioner's children are all United States citizens who rely on their mother for support. (Dkt. Nos. 6 at 42; 11-2 at 2–3; 17 at 16, 17, 18.)

Petitioner's father filed an I-130 immigrant visa petition on Petitioner's behalf on February 26, 2001. (Dkt. No. 17 at 19.) One of Petitioner's sons was born in 2001. (Dkt. No. 6 at 37.) This son has filed an I-130 petition on behalf of Petitioner. (*Id*. at 33.) The copy of the I-130 receipt filed on the docket is not clear enough to identify the filing date. (*Id*.) The record also is unclear as to the status of this Petition.

On or about March 1, 2026, the Las Vegas Metropolitan Police arrested Petitioner on the charge of domestic battery. (Dkt. No. 10 at 2.) The same day, the Office of Enforcement and Removal Operations ("ERO") lodged an immigration detainer for Petitioner with the Clark County Detention Center. (Dkt. Nos. 11-2 at 3; 11-3.) On March 3, 2026, ERO detained Petitioner and transported her to the Henderson, Nevada ICE Detention Center. (Dkt. No. 11-2 at 3.) On March 22, 2026, Petitioner was sent to the Northwest ICE Processing Center ("NWIPC"), where she is currently detained. (Dkt. No. 10 at 2.) On March 3, 2026, ERO served Petitioner with a Notice to Appear ("NTA") which alleged Petitioner was subject to

removal pursuant to Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled" and section 212(a)(7)(A)(i)(I) for not being in possession of a valid unexpired immigrant visa. (Dkt. Nos. 6 at 24–26; 11-5.)

On April 2, 2026, Petitioner appeared at a hearing in the Tacoma Immigration Court and requested a continuance to find counsel. (Dkt. No. 10 at 2.) The Immigration Judge ("IJ") granted Petitioner's request. (*Id.*) On April 8, 2026, Petitioner filed a bond redetermination request with the immigration court. (*Id.* at 3.) On April 14, 2026, the IJ held a bond hearing and ruled the immigration court "had no jurisdiction to hear bond and that Petitioner was subject to mandatory detention." (*Id.*) However, the IJ ruled that if the immigration court did have jurisdiction, it would deny bond because Petitioner "is a significant danger to the community and a flight risk." (*Id.*) On April 23, 2026, Petitioner appeared at another hearing in the Tacoma Immigration Court and requested another continuance to find counsel, which the IJ granted. (*Id.*) On May 5, 2026, Petitioner again appeared at the Tacoma Immigration Court. (*Id.*) The IJ denied Petitioner's request for a continuance and found Petitioner was subject to removal, but advised Petitioner that she might be eligible for cancellation of removal non-permanent residents. (*Id.*) Petitioner completed the application but did not pay the required fee. (*Id.* at 4.) The IJ granted Petitioner an extension of time in which to pay the fee. (*Id.*)

**B. Procedural History**

Petitioner filed a petition for a writ of habeas corpus on May 12, 2026.[1] (Dkt. No. 1.) On May 14, 2026, the Court struck its standard scheduling order and directed Petitioner to file an

[1] On April 10, 2026, Petitioner was part of a multi-petitioner habeas action filed in this Court. *Cardoza-Garcia et al. v. Julio Hernandez et al*, Case No. 2:26-cv-01231-TMC. Petitioners in that case argued their mandatory detention under 8 U.S.C. § 1225(b)(2) violated the INA because

amended petition addressing the deficiencies identified in its order no later than June 15, 2026. (Dkt. No. 5.) On June 4, 2026, Petitioner filed an amended petition (Dkt. No. 6) and the Court issued a new scheduling order (Dkt. No. 7). Petitioner has submitted a form habeas petition that identifies few facts relevant to her case, beyond the date of her detention and the charge on which she was arrested in Las Vegas. (*See* Dkt. No. 6 at 1–8.) However, Petitioner does assert that she was taken into custody by immigration agents following her arrest "without any warning" which prevented her from appearing at her court dates. (*Id.* at 11.) Petitioner also asserts her son, a United States citizen, has filed an I-130 Petition for Alien Relative application on her behalf. (*Id.* at 11, 44–54.) On June 18, 2026, Respondents filed a response.[2] (Dkt. No. 9.) On July 15, 2026, Petitioner submitted a traverse. (Dkt. No. 17.)

## II. LEGAL STANDARD

### A. Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the

---

they were entitled to consideration for release on bond under 8 U.S.C. § 1226(a). Petitioner, who had received a bond hearing, conceded she was ineligible for relief on this basis, and United States District Judge Tiffany Cartwright denied the petition as to her on April 23, 2026.

[2] Respondents' response includes a reference to an individual named "Mihaela Bianca Gagio[.]" (Dkt. No. 9 at 3.) On July 6, 2026, the Court received a motion for clarification from an individual identifying herself as Mihaela Bianca Gagiu. (Dkt. No. 12.) Gagiu attached a copy of the response brief in this case, which she had apparently received. (*Id.*) On July 13, 2026, the Court ordered Respondents to provide clarification concerning Gagiu's situation, noting that Gagiu is a petitioner in another habeas action currently pending before Judge Kymberly Evanson, *Bianca Gagio v. ICE Field Office Director*, 2:26-cv-01903-KKE. On July 15, 2026, Respondents provided clarification, stating the reference to Gagiu in their response was a clerical error that did not otherwise impact their brief. (Dkt. Nos. 14, 15.) Respondents assured the Court that both Petitioner and Gagiu are receiving all correspondence related to their separate habeas proceedings. (*Id.*)

Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. DISCUSSION

### A. Petitioner's initial detention did not violate due process

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner clearly has a private interest in her liberty considering that she has lived in the United State over 40 years, has a family and has made a home. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). But the private interest is not unlimited as immigration officials may take into custody undocumented individuals who presently have no lawful permission to be in the United States after issuance of an administrative warrant issued by the Attorney General. *See generally* 8 U.S.C. § 1226(a). Here, it appears Respondents issued an administrative warrant authorizing them to take Petitioner into custody after they identified her unlawful status. Respondent placed Petitioner in custody immediately after her arrest and release from jail related to an alleged domestic battery charge. Under these circumstances, Petitioner's liberty interest was diminished at the time Respondents took her into custody.

As for the second *Matthews* factor, the risk of erroneous deprivation at the time Respondents took her into custody was low. The undisputed facts indicate Petitioner did not have lawful status at the time she was detained. Her deprivation of liberty at that time was not erroneous.

As for the third *Matthews* factor, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690.

Weighing the circumstances presented, the Court is unable to conclude Petitioner's initial detention violated due process.

**B. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c)**

Respondents appear to argue the IJ determined Petitioner was subject to mandatory detention under § 1226(c) based on her 2001 and 2026 "domestic battery" arrests. (Dkt. No. 9 at 5–6.) However, absent from the record is a copy of the IJ's order denying bond or a transcript of the bond hearing. Thus, the record does not confirm the basis for denying Petitioner a bond.

In addition, Respondents do not identify what part of § 1226(c) encompasses a domestic battery arrest such that Petitioner would be subject to mandatory detention under § 1226(c). Indeed, absent from § 1226(c) is any reference to a crime of domestic violence, which is defined in 8 U.S.C. § 1227(a)(2)(E). *See* 8 U.S.C. § 1226(c). And although § 1226(c) requires mandatory detention for crimes involving "serious bodily injury," *see* 8 U.S.C. § 1226(c)(1)(E)(i)–(ii), a "battery" under Nevada law is not a crime involving "serious bodily injury" and would not support the conclusion that Petitioner is subject to mandatory detention under § 1226(c) even if Petitioner has been convicted of battery in Nevada. *See* Nev. Rev. Stat. 200.481(1)(a) (defining a "battery" as "any willful and unlawful use of force or violence upon the person of another.").

Based on the record provided, the Court finds Plaintiff is not subject to mandatory detention under § 1226(c) and that it was clear error for the IJ to conclude that she was—if in fact that is what the IJ concluded.

**C. Bond Denial**

As with many pro se filers, the petition and traverse filed in this matter lack clarity. Recognizing this dilemma, courts are instructed that "document[s] filed *pro se* [are] to be liberally construed, and a *pro se* complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotations omitted).

Construing the filings in Petitioner's favor, Petitioner argues she is not a flight risk, not a danger, and has potential relief from removal. (Dkt. Nos. 6 at 11 (identifying United States citizen son has filed an I-130 petition); 17 (disputing Respondents' arguments she is subject to 1226(c), that she is not a flight risk, and that she is not a danger to the community)). Taking these arguments together with Respondents' erroneous conclusion that Petitioner was subject to mandatory detention under § 1226(c), that the Court concludes Petitioner should be given a new bond hearing.

Normally, the habeas court's review of an immigration judge's determination of flight risk or dangerousness is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–785 (9th Cir. 2024); *Anyanwu v. Bondi*, Case No. C25-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, No. C25-0995JLR, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may only determine whether the IJ applied the correct legal standard, not reweigh evidence. *Martinez*, 124 F.4th at 785.

In this case, however, absent from the record is a copy of the IJ's order denying Petitioner a bond, making it virtually impossible to determine if the IJ abused their discretion. We know only that Respondents allege the IJ denied Petitioner a bond after having concluded Petitioner

was subject to mandatory detention under § 1226(c). (*See* Dkt. No. 10 at 3.) Respondents further allege that after making such finding, the IJ made an additional, alternative finding that Petitioner posed a significant danger and a flight risk. (*Id.*) Respondents though provide no information as to the IJ's analysis or reasoning supporting such findings. (*See id.*) Counsel for Respondents *assumes* these findings "rest on Petitioner's March 2026 domestic battery arrest, her prior 2001 arrest for similar conduct, and her failure to comply with the 1989 voluntary departure order" (Dkt. No. 9 at 5), but provides no evidence supporting such assumptions.

The Court concludes the IJ abused their discretion in determining Petitioner was subject to mandatory detention under § 1226(c) as the record presented to this Court does not support such a finding. The Court also concludes that the finding of mandatory detention tainted any alternative finding of flight risk or dangerousness. This is particularly true where the record indicates Petitioner (1) has never been arrested or convicted of any crime that would indicate she is a flight risk, (2) was incapable of voluntarily departing at 13 years old, (3) has lived in the United States for around 40-plus years, (4) has adult United States citizen children, and (5) has a pending I-130 petition that may make her eligible to immediately adjust status to that of a lawful permanent resident.[3] These are all factors the IJ should consider in evaluating risk of flight or dangerousness, free from any erroneous conclusion that Petitioner is subject to mandatory detention.

---

[3] Pursuant to 8 U.S.C. § 1255(i), a person who is the beneficiary of an immigrant petition filed before April 30, 2001 may be eligible to immediately adjust status. Petitioner appears to have provided evidence of an immigrant petition filed on her behalf on February 26, 2001 (Dkt. No. 17 at 19) along with evidence of a current petition filed by her adult United States citizen child (Dkt. No. 6 at 33).

## IV. ORDER

For the foregoing reasons, Petitioner's amended petition for a writ of habeas corpus (Dkt. No. 6) is DENIED in part and GRANTED in part.

1. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) based on the record presented in this matter.
2. Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing unless Petitioner requests an extension to allow her time to prepare for the hearing.
3. If the individualized bond hearing is not conducted within fourteen days of this order (unless an extension is requested by Petitioner), Petitioner MUST be released no later than the fifteenth day after this hearing under appropriate conditions of supervised release.
4. Respondents SHALL file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial. Respondents shall file a copy of the immigration judge's written decision granting or denying the bond request. The Clerk is directed to calendar this event.
5. The pending motion for clarification (Dkt. No. 12) is DENIED as moot.

Dated this 27th day of July, 2026.



David G. Estudillo
United States District Judge